**Patricia Y. CURTIS Plaintiff**

v.

**BELLSOUTH CORPORATION Defendant**

**No. CIV.A.3:99CV786WS.**

United States District Court, S.D. Mississippi, Jackson Division.

March 12, 2001.

---

William E. Cavanaugh, Faries & Cavanaugh, Jackson, MS, for Plaintiffs.

William T. Siler, Jr., Phelps Dunbar, Jackson, Wayne T. McGaw, Wayne T. McGaw, Attorney, New Orleans, LA, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WINGATE, District Judge.

Before the court are the defendant's Motion to Strike and defendant's Motion for Summary Judgment filed pursuant to Rule 56(b),[1] Federal Rules of Civil Procedure. Plaintiff Patricia Y. Curtis ("plaintiff" or "Curtis") filed this lawsuit against defendant BellSouth Corporation ("defendant" or "BellSouth"), alleging that BellSouth had violated the Employee Retirement Income Security Act (Title 29 U.S.C. § 1001,[2] et seq. (ERISA)) by denying certain of plaintiff's claims for medical benefits. This court has jurisdiction over plaintiff's claims pursuant to Title 29 U.S.C. § 1132(e)(1)[3] and Title 28 U.S.C. §§ 1331[4] and 1367(a).[5] Plaintiff opposes both of the motions being considered by the court. Having reviewed the parties' memoranda of authorities and having heard arguments of counsel, this court is persuaded to grant both motions for the reasons which follow.

## I. FINDINGS OF FACT

### A. The Health Care Benefits Plan

BellSouth maintains a health care benefits plan known as the BellSouth Medical Assistance Plan ("MAP"), whose terms and conditions are contained in a summary plan description made available to all plan participants and beneficiaries. Plaintiff is the spouse of a BellSouth employee and is a participant in MAP.

No party disputes that MAP is a self-insured health care plan governed, administered and maintained pursuant to

---

1. Rule 56(b), Federal Rules of Civil Procedure, provides:

   **(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Title 29 U.S.C. § 1001(b) states that "[i]t is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

3. Title 29 U.S.C. § 1132(e)(1) states that, "[e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section."

4. Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

5. Title 28 U.S.C. § 1367(a) provides in pertinent part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

ERISA. MAP benefits are available to a participant when the participant requires medical attention covered by MAP. The medical attention must be "medically necessary." MAP Summary Plan Description at p. 55.

BellSouth delegated the day-to-day administration of MAP to a third party administrator, Blue Cross and Blue Shield of Alabama ("Blue Cross"). Blue Cross was delegated "complete discretionary authority" to determine benefits under the plan and to interpret the terms and provisions of the plan. *Id.* at 76.

The MAP summary plan description provides participants an opportunity to request review of a denied claim. *Id.* at 77. In the event the review results in the claim denial being upheld, the participant may make a further appeal by filing a written notice of appeal within 100 days of receiving notice of the review decision. *Id.* The determination made by Blue Cross at the appeal stage is final and dispositive. *Id.* at 78. The summary plan description informs plan participants that it is important that all information the participant wants the administrator to consider be forwarded to Blue Cross for its review on the appeal. *Id.*

### B. *Plaintiff's Claims and Benefits*

In 1992, after plaintiff had begun receiving intravenous immunoglobulin injections administered via a pump, plaintiff made claims and defendant paid MAP benefits associated with the cost of the drug and equipment. Plaintiff underwent similar treatments, made associated claims and defendant continued to pay MAP payments from 1992 and 1998.

In March, 1998, at the request of a claims examiner, the Blue Cross Medical Review Department conducted a review of plaintiff's claims. The Department ordered records from plaintiff's treating physicians, Dr. Robert L. Griffin, Dr. Richard H. Flowers, and Dr. Jo P. Wilson. Medical Review Representative Dale Droke, R.N., determined that the information received indicated that the quantitatively objective immunoglobulin studies had been normal and, thus, the criterion of medical necessity had not been met. Based upon this determination, the defendant then denied plaintiff's claims.

### C. *Requested Review*

Plaintiff sought a review of the claims denial. Blue Cross' Associate Medical Director, Dr. William Hansford, reviewed the records. He concluded that the medications administered to plaintiff had not been medically necessary because the immunoglobulin studies received indicated that plaintiff's immunoglobulin levels had been normal.

Plaintiff thereafter timely appealed the review. Blue Cross Appeals Coordinator, Sharon Kuhn, then reviewed all of the records, including the findings of registered nurse Dale Droke and Dr. William Hansford. She, too, concluded that plaintiff's claims had been appropriately denied. Plaintiff in response instituted this action claiming that the denial of her medical claims had violated her ERISA rights.

## II. *CONCLUSIONS OF LAW*

### A. *Motion to Strike*

■ In response to defendant's Motion for Summary Judgment, plaintiff submitted the affidavit of one of plaintiff's previous treating physicians, Dr. Jo P. Wilson. Plaintiff's counsel conceded at oral argument that the affidavit of Dr. Jo Wilson had not been submitted to the plan administrator during the review process. Plaintiff's purpose in submitting Dr. Wilson's affidavit was to present evidence before this court which, supposedly, would resolve disputed material facts. As a result, this

court cannot receive or consider Dr. Wilson's affidavit since the evidentiary value of the affidavit was not a part of the record reviewed by defendant. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 299 (5th Cir.1999) (en banc). For this reason, this court finds that defendant's motion to strike the affidavit of Dr. Jo P. Wilson is well taken and should be granted.

### B. *Summary Judgment*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Rather, "it is the province of the jury to access the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). "Summary judgment can be granted only if everything in the record demonstrates that no genuine issues of material facts exist." *Id.* It is improper where the court merely believes it is unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962). However, the facts that are irrelevant or unnecessary to a decision are "non-material" and do not prevent summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987).

Summary judgment is mandated in any case where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, Rule 56(c) further requires that the court enter summary judgment if the evidence favoring the non-moving party is not sufficient for the trier of fact to enter a verdict in the non-moving party's favor. See *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1297 (5th Cir.1993).

When the moving party has challenged the non-movant's case under Rule 56(c), the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In response to a motion for summary judgment, the non-moving party is required to respond with specific proof demonstrating a triable issue of fact as to each of the elements required for establishment of the claim or claims asserted. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122–23 (5th Cir.1988).

### (1.) *Standard For Review Of Plan Administrator's Decision*

When the plan grants the administrator the authority to make a final and conclusive determination of the plan, this court's authority to reverse a plan administrator's decision is limited to only those instances in which the plan administrator abused its discretion. *Meditrust Financial Services v. Sterling Chemicals*, 168 F.3d 211, 213 (5th Cir.1999); *Dowden v. Blue Cross & Blue Shield of Texas*, 126 F.3d 641, 643–44 (5th Cir.1997).

■ MAP grants to Blue Cross "complete discretionary authority to determine benefits under the plan and to interpret the terms and provisions of the plan." *Id.* at 76. The MAP summary plan description also provides that Blue Cross' "determinations in interpretations are final." *Id.* This court thus holds that since MAP grants to Blue Cross full discretion and claims determinations to make final decisions regarding determinations and interpretations of the plan, the plan administrator's decision to deny plaintiff's claim cannot be disturbed unless this court finds that the plan administrator abused its discretion or acted arbitrarily or capriciously. *Meditrust,* at 214; *Hilliard v. BellSouth Medical Assistance Plan,* 918 F.Supp. 1016, 1023 (S.D.Miss.1995).

■ Furthermore, this court's review of the plan administrator's decision is limited to the record before the plan administrator at the time the denial decision was made. This court may not review evidence that was not a part of the administrative record except in certain limited exceptions. These exceptions are limited to evidence related to the interpretation of the plan or explaining medical terms and procedures relating to the claim. This court is precluded or prohibited from receiving or considering evidence to resolve disputed material facts. *Vega,* at 299.

### (2.) *Analysis*

The Plan language in question is as follows:

> MAP is intended to reimburse you for medically necessary expenses .... Therefore, any charges for care, treatment, services or supplies that are not determined to be medically necessary ... are considered exclusions and will not be covered by MAP.

Summary Plan Description at p. 55.

■ In determining whether the plan administrator made a legally correct interpretation of the plan language in question, the court must consider the following: (a) whether the interpretation at issue is consistent with a fair reading of the plan; (b) whether there is uniformity in the construction of the plan; and (c) whether the interpretation results in any unanticipated cost to the plan. *Jordan,* 900 F.2d at 56; *Hilliard,* 918 F.Supp. at 1023. If the court determines that the administrator's interpretation was not legally correct, then, and only then, the court must consider whether the administrator's interpretation constituted an abuse of discretion. *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 (5th Cir.), *cert. denied,* 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990); *Hilliard,* 918 F.Supp. at 1023.

■ The court holds that Blue Cross' interpretation of the plan language is consistent with a fair reading of the plan. The court also holds that plaintiff has not put forth any evidence to indicate that Blue Cross interprets the relevant plan language in anything other than a consistent and uniform manner. Likewise, the court finds that plaintiff has not proven that Blue Cross' interpretation of the relevant plan language creates any unanticipated costs for the plan. Accordingly, the court finds that Blue Cross' interpretation of the relevant plan language was legally correct, and this court is not required to conduct any further analysis of plaintiff's claim.

Still, even if the court had found that the plan administrator's interpretation of the plan had been legally incorrect, this court nevertheless would find that the plan administrator had not abused its discretion in denying plaintiff's claim. The record before the plan administrator established that the quantitatively objective laboratory results all indicated that plaintiff's immu-

274

noglobulin levels had been within normal ranges.[6]   Blue Cross reviewed plaintiff's claims several times and specifically relied upon the review of a registered nurse and a medical doctor.   Under these circumstances, this court cannot conclude (based upon the record before it) that Blue Cross' decision and the opinions of its medical professionals was arbitrary or capricious. Furthermore, the court finds that the plan administrator's review constituted a rational connection between the known facts and the decision.   *Meditrust,* 168 F.3d at 215.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that defendant's Motion to Strike be granted.

**IT IS FURTHER ORDERED AND ADJUDGED** that defendant's Motion for Summary Judgment is well taken and should be granted.

---

**6.** This court would reach this determination even if the court had considered the stricken affidavit from Dr. Jo P. Wilson.